WILLIAM W. McCLELLAN AND
MARIA, HIS WIFE,
vs.
JOHN P. KENNEDY ET AL.

December Term, 1852.

[RELEASE BY WARD TO GUARDIAN—EVIDENCE.]

ACCOUNTS of a guardian, passed by the Orphans' Court, admitting an indebtedness to his ward, are *prima facie* evidence of such indebtedness against the grantees of the guardian claiming under a deed executed by him subsequent to the passage of the accounts.

The evident intention of the 7th section of the Act of 1829, ch. 216, which makes releases, executed by a female ward of the age of eighteen to her guardian, as valid as if she was of full age, was that the release should be a release executed to him *who had been* guardian, but whose office had ceased by the arrival of the female to the age of eighteen.

A female ward attained the age of eighteen on the 9th of March, 1834, and on the 12th of the same month she executed a release to her former guardian, who had been deposed from his office nearly nine years before, of all claims she had against him as such guardian. HELD—

That the authorities which speak of the suspicion and jealousy with which the Courts view transactions between guardians and wards, and others occupying fiduciary relations immediately after such relations are dissolved, do not apply, and the release must be regarded as a free and voluntary act, which she cannot afterwards repudiate.

A father married his step-daughter on the 26th of February, 1825, and on the 23d of March following, she conveyed to her supposed husband all her property of every description, being a large amount, for a nominal consideration, acknowledging the deed as a *feme sole*, and was described as, H. A. M. "otherwise called" H. A. B. (her maiden name). On the day following, she united with her husband in a deed of the same property to a third person, who on the next day reconveyed to the husband. HELD— that these deeds were fraudulent and void.

The property above spoken of was afterwards reconveyed to the wife, and the bill in this case was filed by the ward, who had executed the above-mentioned release; and her husband, against her former guardian, who was also the husband of the wife to whom the property had been so reconveyed, seeking to make that property responsible for her claim, HELD—

That though the release may have been gratuitously executed, yet she cannot be permitted to repudiate it as against the wife to whom the property, of which she had been unfairly deprived, had been restored.

A proceeding to set aside this release, against the guardian alone, to which

the wife was not a party, and the decree obtained thereunder, can have no operation as against the wife.

If that proceeding was instituted for the purpose of removing the lease out of the way, and subjecting the wife's property to the payment of the ward's claim, it was essential that the wife should have been made a party, and the decree would otherwise, as to her, be fraudulent and void.

[The bill in this case was filed on the 15th of December, 1841, by William W. McClellan and Maria, his wife, and states that the complainant, Maria, who is the daughter of Richard Bennet Mitchell, while an infant, became entitled to a large estate; that her said father was duly appointed her guardian, took possession of her property, and rendered several accounts thereof to the Orphans' Court; and that, by the final one rendered on the 5th of March, 1834, he was indebted to the said Maria, as his ward, in the sum of $14,891 14, which sum, with interest from that day, the bill charges to be still due and unpaid, with some small deductions. That said Maria attained the age of eighteen years on the 9th of March, 1834, and married the complainant, William, on the 11th of December, 1837. That to secure payment to said Maria, of all sums due by said Richard as such guardian, to said Maria and her sister Elizabeth, now deceased, (of whom he was likewise guardian), said Richard conveyed by deed, dated the 25th of August, 1825, to John P. Kennedy and John Glenn, all his real and personal estate, large and valuable, including particularly all the property conveyed to him by deeds from Henrietta A. Bedford and Thomas H. Wright; that said conveyance being in trust for the object aforesaid, was accepted by said Kennedy and Glenn, but they, without making any payment to the said Maria, or any sales towards that end, upon some arrangement with the said Henrietta and one John Hillen, for their indemnification against the claim of the said Maria, and her rights and demands under said trust, executed a deed, dated 2d of August, 1827, conveying to said Henrietta and her heirs all the estate which was conveyed to them by said Richard B. Mitchell, which deed was confirmed by another from the same parties, dated the 25th of October, 1832. That

said Henrietta, by deed, dated the 18th of October, 1827, conveyed to said Hillen a part of said property in trust, to sell the same, and apply the proceeds to satisfy the claims provided for by the said deed of trust to Kennedy and Glenn; and that under this deed, said Hillen has sold two pieces of ground, one to the Union Bank of Maryland, and the other to Rezin Wright; and that under color of said deed, the said Hillen also conveyed another parcel of said estate to said R. B. Mitchell, which has since been sold under a decree of this Court, to satisfy part of the complainants' claim against said Richard, as guardian as aforesaid, as by the proceedings in the cause wherein said decree was passed, between the present complainants as plaintiffs, and said Richard and Elizabeth A. Mitchell, and said Kennedy and Glenn as defendants, will appear. That the proceeds of the sales to the Union Bank and Wright were applied to satisfy debts of said Richard, other than his liabilities to the complainant, Maria. That said Elizabeth A. Mitchell heretofore released to said Richard, and duly and effectually declared herself satisfied for all demands against said Richard, as her guardian as aforesaid; and that she has since died. The bill prays that all the property conveyed to Kennedy and Glenn (except that sold by Hillen to the Union Bank, Wright, and Mitchell) may be sold, and the claim of the complainant, Maria, satisfied out of the proceeds; that Kennedy and Glenn may account for all their proceedings as trustees as aforesaid; and if complainants so elect, that said Henrietta may be decreed to pay complainants all the money she may have received from sales of any part of said estate, and that the executors of Hillen may account for all moneys received by their testator, from any sales under color of the deed to him, and if complainants so elect, pay them all such sums of money as under said obligation of indemnity might be claimed by said Kennedy and Glenn from said Hillen, and for general relief.

The defendants to this bill were, the said Henrietta A. Bedford, Richard B. Mitchell, Kennedy and Glenn, the executors of Elizabeth A. Mitchell, and John Hillen, the three former of

whom, together with the executors of Hillen, answered jointly, and admit the guardianship of said Richard B. Mitchell, his indebtedness to his ward, the complainant, Maria, on the 5th of March, 1834, in the sum of $14,891 14; and that said Maria attained the age of eighteen years, and married, as stated in the bill. Their answer then states and charges, that said Henrietta A. Bedford was the daughter of Guning S. and Elizabeth Bedford (the latter being the only child of Daniel Deady, formerly of Baltimore); that her father died in 1809, and her mother afterwards married the said Richard Bennet Mitchell, and died in 1816. That by his marriage with her mother, the said Richard became her guardian, she having become possessed of a large property, by the will of her grandfather, the said Deady. That being young and inexperienced, and left altogether under the guidance and authority of the said Richard, she was unhappily persuaded by him to become his wife, and not knowing that in her circumstances and relationship, this was forbidden by the laws of Maryland, she was married to him. That whilst married to her mother, the said Richard had three children, Elizabeth, Maria, and Frederick, the latter of whom died a minor, and that Elizabeth has also died within a few years past. That the marriage between the said Richard and Henrietta took place on the 26th of February, 1825, and on the 23d of March following, the said Richard, as this defendant Henrietta alleges, using his influence over her, which was at that time greatly increased by the peculiar circumstances attending his pretended marriage, and exerting a control over her, which deprived her of the free exercise of her will and judgment, induced her to execute a deed to him, dated on that day, by which she conveyed to him all the property and estate which she had received under the will of her grandfather, being all the property and estate of which she was possessed; that on the following day (24th of March), she was in like manner induced to join with the said Mitchell, in a conveyance of all the said property to one Thomas H. Wright, and that on the 25th of March, 1825, being the next day, the said Wright reconveyed all said property to said

Mitchell, by which proceedings he became possessed of every-thing she had previously owned. That these conveyances were obtained from her, under a full and complete persuasion that she was at that time his wife, she being aware of no legal impediment to her marriage.

The answer further states, that this marriage was subse-quently renounced by the parties, and that said Henrietta, upon becoming acquainted with its nullity, from that time no longer cohabited with the said Mitchell, who was afterwards pro-secuted criminally and convicted for his infraction of the law.

The defendants, Kennedy and Glenn, further state, that soon after this marriage, to wit, on the 25th of August, 1825, for what reasons they are not aware, said Mitchell executed to them a deed of trust of all the property which had been con-veyed to him by said Henrietta, in trust, *first*, to sell the whole or part thereof; *secondly*, after paying expenses, to pay the claims of the grantor's two daughters, Elizabeth and Maria, his wards; and *third*, to pay over the residue to him. That about the date of that deed, they understood that said Henri-etta, and her two half-sisters, Maria and Elizabeth, were living on good terms, and they were then and subsequently frequently informed by said Mitchell, that both Elizabeth and Maria had expressed determination to release their father from all claims they might have against him, when they should come of age. That after the prosecution against Mitchell, above referred to, and after said Henrietta had separated her-self from him, and taken shelter under the protection of her friends, proceedings in Chancery was instituted by her, to set aside her deeds before referred to, made on the 23d and 24th of March, 1825, by a bill filed in this Court, in July, 1826, set-ting forth the grounds upon which she asked a decree declar-ing them void, and to compel a reconveyance of the property, to which proceedings the defendants beg leave to refer, and to make the same, and the facts therein stated, part of this their answer. That about this time, also, proceedings were insti-tuted in the Orphans' Court of Baltimore County, to deprive Mitchell of the guardianship of his daughters, and an order to

that effect was passed, and John Hillen was appointed guardian in his place. That from the time of filing the above bill in Chancery, and their becoming acquainted with all the circumstances of the case, they never had a doubt but that Mitchell had improperly, and by exercise of undue influence over the said Henrietta, and under a misconception on her part of her relations and duties to him, obtained the deeds of March, 1825, and that the same would be set aside and annulled ; and being under this impression, they lent their aid to obtain an arrangement between the parties, by which further litigation, and its unpleasant disclosures of facts to the public, relating to the unfortunate and disastrous incident of the marriage might be prevented, and the interests of the said Henrietta be protected as fully as by a decree. These considerations led to a settlement, by which the proceedings in Chancery were abandoned, and they (Kennedy and Glenn), together with said Mitchell, executed a deed to the said Henrietta, on the 2d of August, 1827, reconveying to her, as stated in the bill, all the property they had derived from Mitchell. That indemnity was given to them by said Henrietta and John Hillen, as part of said arrangement, said indemnity being intended to protect them against any possible demand that persons conceiving themselves to have a claim might make. They admit they executed the deed of the 25th of October, 1832, as stated in the bill. They admit that it is true, that said Elizabeth A. Mitchell executed the release, as stated in the bill, on the 17th of November, 1827, immediately after she came of age, and was no more, as they understood, than a compliance with her previously often-expressed purpose.

And these defendants further state (a fact which seems carefully excluded from the bill) that the complainant Maria also, upon her coming of age, and upon the rendition of her father's final account as her guardian, in like manner executed a full and complete release of all demands against him, declaring herself satisfied and paid all that, by the account rendered, appeared to be due by her said guardian to her; said release being executed on the 12th of March, 1834, a copy of which, toge-

ther with the account of her said guardian rendered at that time, are filed with the answer as exhibits. That if it be true, as alleged, that the complainants have heretofore obtained a decree, by which a part of this property called "Longworth" has been sold to satisfy in part the complainant's claim, such decree could only have been obtained by default, or neglect to defend the case on the part of defendants, or was given by consent of said Mitchell, and that the release of said Maria, above referred to, was either withheld from that case as from the present, or that it was not set up by those who were competent to set up and maintain the same; in any of which events, that decree cannot bind the parties to this suit. They expressly aver and charge, that the said release was freely and voluntarily made by said Maria after she arrived at age, and was made and executed in accordance with her previous often-expressed determination to execute the same when she should be competent to do so; and that it was given with the express motive of relieving her father, who was without property or the means of livelihood; that it was given from a concerted determination between her and her sister Elizabeth, both of whom had abundant means of support to do this act for the benefit of their father; that it was done by Elizabeth on her part, in 1827, freely and in good faith, and as freely and in like, good faith was it done by the said Maria when she came of age; that it was never the purpose of either to charge their father with the payment of said debts, and much less their purpose to wring from the portion of their half-sister Henrietta (a portion greater than their own, but in fact by her misfortunes rendered much less) the payment of their own father's debt to them, and by such act further to impoverish her that they might profit by it. They further charge that it is not, nor ever was the wish or the purpose of the said Maria to invalidate or set aside that release, made nearly four years before her marriage; that she does not fully concur with or join her husband in this suit, but is induced thereto by his control over her, and they pray the Court to take means to ascertain whether it is with her consent and approbation that

she joined in this bill, and whether she seeks to invalidate the release executed by her as aforesaid, and whether it is her purpose, notwithstanding this release, to take the property of her half-sister Henrietta to pay the debt which her father once owed her and which she released, as above stated.

They then aver that the debt, if any, was due and payable on the 9th of March, 1834, and long before that date; and that the same not having been demanded within three years after the same became due, is wholly barred by the statute of limitations, which they accordingly plead; and in conclusion, sum up their answer as follows:

"*First.* That the property mentioned and described in the deed of trust, from Mitchell to the defendants Kennedy and Glenn, was originally derived by the said Mitchell from the defendant, Henrietta Bedford, upon a false and fraudulent pretext of marriage, and that consequently both the original deed to Mitchell, and Mitchell's deed to the defendants, Kennedy and Glenn, were void. This consideration was the ground upon which the case in Chancery to set aside the deed was settled, the suit withdrawn, and the property reconveyed by Kennedy, Glenn and Mitchell, to the said Henrietta.

"*Second.* That there was nothing in the deed of trust to prevent the parties thereto from conveying the property to the said Henrietta, she agreeing on her part to meet any engagement which the trust might have created, if it were valid.

"*Third.* That there is no just claim on the part of the complainants, the same having been released. That said release is intentionally kept out of view by the complainants, and that the complainant, Maria, does not voluntarily concur in this suit to invalidate said release.

"*Fourth.* That the claim of the complainants, if they ever had any, is barred by limitations and cannot be recovered."

The *documentary proof* in the case, consists of the various deeds referred to in the bill and answers. 1st. The deed of the 23d of March, 1825, "between Henrietta A. Mitchell, otherwise called Henrietta A. Bedford" and Richard Bennet Mitchell, by which the former conveys to the latter, in fee

simple, for the nominal consideration of "five dollars," all the property of every description to which "she is in any manner entitled under the last wills and testaments of her grandfather, Daniel Deady," and "her grandmother, Winefred A. Pollock," or under either of them. This deed was acknowledged by the grantor in the usual way, as a *feme sole*, and not as a married woman. 2d. The deed of the 24th of March, 1825, "between Richard Bennet Mitchell and Henrietta A. Mitchell, his wife, lately Henrietta A. Bedford, and Thomas H. Wright," by which the former conveyed to the latter the same property absolutely, in fee simple, for the consideration of "five dollars." This deed was acknowledged by the grantor, Henrietta A., in due form as the wife of the said Richard. 3d. The deed of the 25th of March, 1825, from said Thomas H. Wright, reconveying the same property to Richard B. Mitchell, in fee also, for the consideration of the sum of "five dollars." 4th. The deed of trust of the 25th of August, 1825, by which the said Richard B. Mitchell, for the nominal consideration of five dollars, "and also for divers good causes and other valuable considerations," conveyed to John P. Kennedy and John Glenn, all the property of every description to which the grantor is in any manner entitled under the deeds above mentioned, or "in any other way whatsoever, whether in possession, reversion, remainder, or expectancy, or otherwise howsoever," *in trust*, to sell and dispose of the same or any part thereof as to them shall seem most advantageous, for cash or on credit, and apply the proceeds, 1st, to the payment of costs and expenses attending the execution of the trust; 2d, "to secure and insure the payment of all sums of money, now or that may hereafter be due, owing, or payable to Elizabeth Mitchell and Maria Mitchell, from the said Richard Bennet Mitchell as their guardian;" and 3d, to pay the residue after satisfying the above objects to the grantor, his heirs or assigns. 5th. The deed of the 2d of August, 1827, from Kennedy, Glenn and Mitchell, to Henrietta A. Bedford, by which, after reciting the deed of trust from said Mitchell to Glenn and Kennedy of the 25th of August, 1825, and "that whereas, the

said Henrietta A. Bedford is willing and hath agreed to pay and satisfy all and singular the debts due by the said Richard Bennet Mitchell, and intended to be secured and paid by and from the said trust fund, and the said Henrietta A. Bedford hath actually paid or secured to be paid all and singular the aforesaid debts, and hath also agreed to indemnify and save harmless the said John P. Kennedy and John Glenn, from all responsibility and engagements heretofore incurred or entered into by or on account of the aforesaid trust," the grantors convey the property therein described to the said Henrietta A. Bedford in fee simple. 6th. The deed of the 18th of October, 1827, from Henrietta A. Bedford to John Hillen. This deed recites that whereas, in the deed last mentioned, "it is witnessed, that in consideration that the said Henrietta A. Bedford had undertaken to indemnify and save harmless the said Kennedy and Glenn, on account of certain debts due and owing by said Richard B. Mitchell, and therein mentioned, or the non-payment thereof," the said Glenn and Kennedy secured to her the property therein and hereinafter mentioned, "and, whereas, the said John Hillen hath agreed to become, and hath actually become bound and engaged, together with the said Henrietta A. Bedford, and as her security in a penal bond to the said Kennedy and Glenn, conditioned to secure them harmless, as aforesaid, and for the purpose of securing and saving harmless the said John Hillen, on account of the said securityship, as also for the purpose of enabling the said John Hillen to raise money for the payment of the said debts, or some of them, by a sale of the premises hereby conveyed or a part thereof," and then conveys the same property mentioned in the preceding conveyance to said John Hillen, *in trust*, to sell the same or any part thereof, and apply the proceeds, 1st, to the payment of the expenses of the trust; 2d, "to the payment of all or any of the debts hereinbefore mentioned, with the interest and costs thereon;" and 3d, to pay the balance and such of the property as may remain unsold to the grantor and her heirs and assigns. 7th. The deed of the 5th of October, 1832, from said Kennedy, Glenn and Mitchell, to Hen-

rietta A. Bedford, confirming their deed of the 28th of August, 1825, and curing some supposed defect in the description of the property conveyed.    These several deeds were all duly recorded.

The complainants also filed as evidence, two accounts of Richard B. Mitchell, as guardian of Maria Mitchell, passed by the Orphans' Court, the one dated the 18th of April, 1825, and showing a balance due the ward of $10,809 55.    The other called the "fourth and final account" of said guardian, dated the 12th of March, 1834, showing a balance due the ward of $14,891 14, and craves an allowance for that amount, "for property and money delivered and paid over to his ward, the said Maria Mitchell, she being now of age, as per release recorded appears."    Also, a release by said John Hillen to Henrietta A. Bedford, dated the 2d of April, 1834, of the deed of trust of the 18th of October, 1827.    This release, after reciting the object of the said deed of the 18th of October, 1827, and the securityship of said Hillen, and that, by the sale and conveyance thereunder by Hillen of two parcels of the property thereby conveyed, namely, one to the Union Bank of Maryland, and the other to Rezin Wright, "and from and by the income of said trust estate and property, and otherwise all the debts, costs, commissions, and expenses mentioned, or intended to be secured by the deed of trust above referred to from the said Henrietta A. Bedford to the said John Hillen, have been paid, discharged, and fully satisfied, and the said John Hillen has become and is wholly relieved and exonerated from the securityship aforesaid, and all liability heretofore assumed for the said Henrietta A. Bedford, as is hereby acknowledged by the party of the first part hereto, wherefore this indenture is executed, and is intended to operate as a release and reconveyance of all said trust property and premises, excepting the parts" sold and conveyed as aforesaid, and excepting also the farm called "Longworth," and the slaves and personal property thereon, which were conveyed and released absolutely by said Henrietta to said R. B. Mit-

chell, then reconveys the residue to the said Henrietta A. Bedford, her heirs and assigns.

The complainants also filed a transcript of the proceedings upon a bill filed in this Court by the present complainants, on the 21st of May, 1838, against Richard B. Mitchell, to set aside certain conveyances made by the complainant, Maria, among which was the release by her to him as guardian, referred to in the answers of the defendants. These proceedings resulted in a decree passed by the Chancellor (*Bland*), on the 1st of July, 1840, declaring the conveyance fraudulent, and confirming the Auditor's account, which set aside the release referred to. To this record the defendants excepted, upon the ground that they were not parties to the suit, and the decree was therefore not binding upon them, and that they being parties in interest, the omission to make them parties to that suit was a fraud.

The *defendants* on their part proved that Richard B. Mitchell was removed from the guardianship of his children, Elizabeth and Maria, by an order of the Orphans' Court, passed on the 29th of June, 1825, and John Hillen appointed guardian in his place on the 2d of July following. That Richard B. Mitchell was indicted in October, 1825, for marrying his stepdaughter, the said Henrietta A. Bedford, and was subsequently convicted and fined under this indictment. He then offered the following release, executed by the complainant, Maria, before a justice of the peace, on the 12th of March, 1834, " Know all men by these presents, that I, Maria Mitchell, one of the heirs and legal representatives of Daniel Deady, deceased, have this day received from Richard B. Mitchell, my late guardian, possession of the following property and cash, viz. :

" Possession of one-fifth of one-sixth of
    sundry leasehold estate, . . . $2,550 00
Also one-fifth of one-sixth of same, . 330 13
And in cash, . . . . . 11,711 14
                                 ————————
Making in the whole the amount of, . $14,891 14

being in full of all property and cash due to me by my said guardian, and in consideration thereof, I do hereby release, acquit, exonerate, and discharge the said Richard B. Mitchell, his heirs, executors, and administrators, of and from all and every action, suit, claim, or demand, which could or might possibly be brought, exhibited, or prosecuted against him, them, or any of them, for or on account of the said sum of money and property, or the payment thereof, hereby declaring myself fully satisfied, contented, and paid the said amount as above specified." This release was duly recorded in the Register of Wills' office in Baltimore County. They also offered the parol testimony of Dr. Gunning S. Bedford, the brother of said Henrietta A. Bedford, in relation to the marriage of his sister with the said Richard B. Mitchell, and the undue influence exercised over by him, and sustaining the allegations of the answer in other particulars. This evidence the complainants excepted upon the ground that it consisted of declarations made by said Henrietta, and was mere hearsay. The cause coming on for final hearing, the Chancellor delivered the following opinion.]

THE CHANCELLOR:

Assuming that the sole object of the bill filed in this cause is to affect the property which originally belonged to *Henrietta A. Bedford*, and which, by the conveyances mentioned in the proceedings, became vested in John P. Kennedy and John Glenn, on the 25th of August, 1825, and I am quite satisfied that the merits are with the defendants.

This conclusion has been formed after listening with great attention to the very able arguments of counsel on both sides, and a careful examination of the proceedings which make up the record before me.

These proceedings show that the form of a marriage took place between Richard Bennet Mitchell, and his stepdaughter *Henrietta A. Bedford*, on or about the 26th of February, 1825, she at that time owning and being possessed of a large estate real and personal. Within less than one month from

the date of this illegal marriage, to wit, on the 23d of March following, she conveyed to Mitchell absolutely, for the nominal consideration of five dollars, the whole of her estate of every kind and description whatever. In this deed the grantor is described as Henrietta A. Mitchell, otherwise called Henrietta A. Bedford. From this circumstance, and from the absence of a privy examination of the grantor, it has been inferred that doubts were then entertained of the validity of the marriage. But on the day following, another deed was executed by Mitchell and the said Henrietta A., as his wife, conveying the same property to Thomas A. Wright, which was acknowledged by her as a married woman, and on the succeeding day, that is, on the 25th of March, 1825, Wright, the grantee, reconveyed to Mitchell, thus so far as the forms of law are concerned, vesting the whole estate of this female in the man who had been the husband of her mother, and who consequently stood towards her in a relation of affinity which forbade his being her husband.

Looking at this transaction independent of the parol proof which had been excepted to, and I think no court of justice on earth would hesitate to condemn it, and if it could be done without prejudice to the rights of innocent third parties, restore to the injured and deluded female the property wrongfully taken from her. What possible motive can be attributed to Mrs. Bedford in the execution of these conveyances (conceding that no undue influence was exerted towards her), but a desire or a willingness to vest in the man to whom she supposed she was lawfully married, the property which belonged to her? If she had been convinced of the invalidity of the marriage, and we are to judge of her conduct and suppose her to be influenced by the feelings and motives which usually actuate the human heart, we must be brought to the conclusion that Mitchell was the person of all the world to whom she would have been least likely to make a gratuitous conveyance of her estate. The wrong he had inflicted upon her was of that character which admits of no expiation. Neither time or repentance, so far as this world is concerned, could restore her

to the position of respectability from which he seduced her, and to suppose that, knowing this, and free from all restraint, she selected him as the object of her bounty, as the person to whom without consideration she should give the whole of her estate, which came from her ancestors, and leave herself a dependent upon his charity, is to suppose that against which every instinct of nature is at war.

I entertain, therefore, no doubt whatever that Henrietta A. Bedford executed the deeds in question under the conviction that she was the lawful wife of Richard B. Mitchell, and apart from the evidence of Dr. Bedford, I think there is strong ground for believing that the influence of a husband was exerted to procure the conveyances from her. The proximity of the deeds to the marriage, in point of time, is a circumstance which cannot be overlooked, and is pregnant with suspicion. Within less than one month from the nuptials, the stepdaughter and wife is divested of her whole estate. He who had been husband to her mother, and to whom she had in the lifetime of her mother stood in the relation of daughter, took her to wife, and before the first moon had passed, he strips her of every atom of property she owned. Overlooking everything else, there is an unbecoming precipitancy in the act which throws a flood of light upon the motives of Mitchell in marrying his stepdaughter. It could not have been affection; and when we find that instantly, upon being clothed with the authority of a husband, the deceived woman conveys to him all her estate, it is most natural to suppose that the solemnity of a marriage was resorted to as an instrument to procure the conveyance.

Such is my conclusion, and therefore I say, that unless some innocent third party be made to suffer wrong from which but for the conveyance such party would not have been subjected, the merits of the cause are with the defendants, upon the assumption that the exclusive purpose of the bill is to affect the property which originally belonged to Henrietta A. Bedford. To make that property responsible for the debts of Mitchell, contracted without any reference to it, and when his creditors,

relying upon the security afforded by it are not shown to have lost or abandoned any remedy or redress against him, would, in my judgment, be in opposition to the plainest principles of justice.

But the attempt here, is, in part at least, so to charge this property for the benefit of parties who certainly did not trust Mitchell upon the faith of the conveyance, and who are not shown by any proof in this cause to have lost or abandoned any remedy, which but for the conveyance they would have pursued. Mitchell, it appears by the proceedings, was the guardian of his daughter, Maria, who subsequently intermarried with the complainant, William W. McClellan, and as such guardian settled an account in the Orphans' Court of Baltimore county on the 18th of April, 1825, by which it appears there was due from him to his ward, a balance of $10,809 55. Afterwards, and after he had been removed from the guardianship, and after his former ward had attained the age of eighteen years, to wit, on the 12th of March, 1834, he passed what is called his fourth and final account, in which the former balance is brought forward, and charging interest upon that portion of it which consisted of cash, there is produced an aggregate of indebtedness amounting to $14,891 14, and he craves to be allowed, and is allowed by the Court, for property and money delivered and paid over to his ward, a credit for that amount, as "per release recorded appears ;" thus upon the face of the record settling the whole claim, and discharging himself from liability.

It has been urged by the defendant's counsel, that, as upon the face of this account nothing appears to be due, and as complainants have produced it as a part of their evidence, they are concluded by it, and their bill for this reason must be dismissed. In this view I do not concur. The answer of the defendants admits very explicitly that the balance due from Mitchell to his ward was not in fact paid, but as stated in the answer, "that the release was given with the express motive of relieving her father, who was without property or the means of livelihood ;" "and that it never was the purpose of the

said Maria (or her sister Elizabeth, his other daughter and ward, and who also released), to charge her father with the payment of said debt."

I, therefore, throw out of view the account passed in March, 1834, either as evidence of a claim on the part of the complainants against Richard B. Mitchell, the former guardian of the complainant, Maria (now Mrs. McClellan), or as proof of the payment of such claim. It cannot, in my opinion, be used against the defendants, because it is subsequent to the deed from Glenn, Kennedy, and Mitchell to Mrs. Bedford, bearing date the 2d of August, 1827, by which the property was reconveyed to her; nor can it be viewed as evidence of payment of the balance due from Mitchell to his ward, because the answer of the defendants concedes the contrary.

But in my opinion, the fact of indebtment of R. B. Mitchell to his former ward, Maria, is shown by the account passed in the Orphans' Court on the 18th of April, 1825; and I can see no good reason why in a proceeding to charge the property conveyed by Mitchell in trust to Messrs. Glenn and Kennedy, on the 25th of August of that year, the account may not be used as evidence of such indebtment. The point appears to me to be conclusively settled against the defendants, by the case of *Richards and Wife* vs. *Swann et al.*, 7 *Gill*, 367, in which it was held that accounts passed by a guardian in the Orphans' Court, in which he admitted himself to be indebted to his wards, were *prima facie* evidence of his indebtedness against the grantee of the guardian, claiming under a deed executed by him subsequent to the passage of the accounts. In that case the account was passed by the guardian in the Orphans' Court on the 27th of June, 1843, and the deed alleged to be fraudulent against creditors, was executed on the 15th of July, 1844; and upon a bill filed by the ward to vacate the deed as fraudulent against creditors, the account was admitted by the Chancellor, and by the Court of Appeals, as *prima facie* evidence of the indebtment of the grantor, and the deed was annulled. So far as this point is concerned, no distinction can be shown between that case and this; and the account,

therefore, of the 15th of April, 1825, must be received as *prima facie* evidence of the indebtment of Mitchell to his ward, Maria, in a proceeding to affect the property embraced in the deed of Mitchell to Kennedy and Glenn of the 25th of August following. It is quite as admissible as would be his note or bond, executed at the same time.

But the record further shows, that Maria, the former ward of Mitchell, attained the age of eighteen years on the 9th of March, 1834, and on the 12th day of the same month and year, she executed and acknowledged, in due form of law, a release, to the said Mitchell, which release was duly recorded in the office of the Register of Wills for Baltimore County, and a copy under seal is filed and is relied upon as a complete and full defence to the complainant's claim. The instrument in terms releases, exonerates, and discharges Mitchell, his heirs, executors, and administrators, from all and every action, suit, claim, and demand, which could or might possibly be brought, exhibited, or prosecuted against him, them, or any of them, for or on account of the money and property or the payment thereof, which by the last account settled in the Orphans' Court, appeared to be due from the said Mitchell to his former ward. And the question now to be considered is, whether under the circumstances of this case, the release is an answer to the bill which seeks to charge the property which originally belonged to Mrs. Bedford, and of which she was deprived by the improper means and instrumentalities before adverted to?

If it be conceded, as I think it must be, that the money appearing to be due from Mitchell to his daughter Maria, by the account in the Orphans' Court, was not in fact paid, and that her release consequently was gratuitous, it is equally clear that the deeds executed by his stepdaughter, Mrs. Bedford, by which her whole estate was conveyed to Mitchell, were likewise utterly destitute of consideration. The want of consideration is in truth apparent upon their face; and in addition to this, they were in my judgment executed under circumstances which lead strongly to the conclusion that imposition was practiced in obtaining them. There is not, in my opinion, the slightest ground

for supposing that the release from Mrs. McClellan to her father was procured by any undue influence exerted by him towards her. He ceased to be her guardian on the 29th of June, 1825, and the release was not executed until the 12th of March, 1834, nearly nine years afterwards; he in the interval having been indicted and convicted for having unlawfully married his stepdaughter, Miss Bedford. The release, therefore, though gratuitous, must be assumed to have been freely and voluntarily made, with full knowledge of all the circumstances, and a total exemption from any influence which could affect its validity.

In the case of *Fridge* vs. *The State*, 3 *G. & J.*, 104, it was decided that a female under the age of twenty-one cannot execute a release to her guardian, though she has capacity to receive payments from him at the age of sixteen; and the release in that case, which was executed on the 15th of July, 1824, and which the Court declared was manifestly prejudicial to the infant, was adjudged to be void. But since then the legislature has interposed, and by the 7th section of the Act of 1829, ch. 216, the releases of females of the age of eighteen years to their guardians, or to any executor, or administrator, are placed upon the same footing precisely as if such females were of the full age of twenty-one years. The language of the section is, "that from and after the passage of this Act, any receipt, acquittance, release, or final discharge, which shall be executed before the Orphans Court of the county where the estate shall have been settled, by a female of the age of eighteen years, to any guardian, executor, or administrator, shall have the same effect and operation in law in every respect, and to all intents and purposes, as if such female were of the full age of twenty-one." And by the provisions of the Act of 1831, ch. 305, similar releases, executed by females of the age of eighteen years, and acknowledged before a justice of the peace, are declared to have the same effect as if acknowledged before the Orphans Court. The release of the present Mrs. McClellan, to the former guardian Mitchell, was executed and acknowledged, in all respects, in conformity with the requirements of

these laws, she being at the time above the age of eighteen years.

It is said, to be sure, that these laws are inapplicable to the present case, because Mitchell, at the date of the release, was not the guardian of his daughter, Maria, he having been removed in 1825, and another guardian appointed in his place, the argument being that releases made by females of the age of eighteen, are not effectual except when made to their guardians. The answer to this is that, by the express terms of the 6th section of the Act of 1829, ch. 216, the guardianship ceases when the female ward attains the age of eighteen years, and consequently, if a release is only good when made to a person then, at its date, filling the office of guardian, the 7th section could have no operation whatever, because it would, upon that construction, provide for the execution of a release to a guardian when there could be none. It is clear the legislature intended that the release spoken of should be a release executed to him *who had been* the guardian, but whose office had ceased by the arrival of the female ward to the age of eighteen years. But if there could be any doubt upon this subject, it would be removed by the 4th section of the act of 1831, ch. 305, which, in speaking of these releases, gives validity to such as are executed to any executor, administrator, or guardian, "*or person who has been such.*"

I think, therefore, there can be no doubt whatever that we are to deal with this release, executed by the present Mrs. McClellan to her former guardian, she being then of the requisite age, as if she had been at the full age of twenty-one years. Indeed, there can be no doubt upon the subject, because such is the plainly declared will of the legislature. The authorities which speak of the suspicion and jealousy with which the Courts view transactions between guardian and ward, and others occupying fiduciary relations, immediately after such relations are dissolved, and before the influences which usually result from them may be supposed to have passed away, do not apply here, because the relation had terminated nearly nine years before this release was executed. It must be taken, therefore, as an advised, unbiassed, and voluntary renunciation

on the part of the female complainant, before her intermarriage with the other complainant, of her claim against her former guardian, made at a time when she was as competent to perform the act as if she had been of the full age of twenty-one years. Viewed in this light, and I can view it in none other, and I cannot bring myself to believe she can now repudiate that act, and especially I think she cannot be permitted to do so, as against Mrs. Bedford, who, by the conveyances set out in the proceedings, has been restored to the property which originally belonged to her, and of which I think it very clear she was unfairly deprived.

Mrs. Bedford was not a party to the deed of trust executed by Richard Bennet Mitchell to Messrs. Kennedy and Glenn on the 25th of August, 1825. She neither united in the execution, or acknowledged it, and therefore cannot be bound or affected by any of its provisions or trusts. One of the trusts of that deed was "to secure and insure the payment of all sums of money now or that may hereafter be due, owing, or payable to Elizabeth Mitchell or Maria Mitchell, from the said Richard Bennet Mitchell as their guardian ;" the surplus, after paying the debts intended to be secured, being reserved to the grantor, Mitchell. But though Mrs. Bedford was no party to this deed, and upon no principle can be affected by it, yet it is said that in the conveyance of Kennedy, Glenn, and Mitchell to her, of the 2d of August, 1847, there is an express stipulation that she " is willing and hath agreed to pay and satisfy all and singular the debts due by the said Richard Bennet Mitchell, and intended to be secured and paid by and from the said trust fund," and that she hath paid, &c. This last statement, it is correctly said, is inconsistent with the fact, and it is urged that whatever may be said of the conveyance of Mrs. Bedford to Mitchell of March, 1825, or of his conveyance to Kennedy and Glenn of the August following ; yet here is an express engagement on her part made when the influence of Mitchell over her was at an end, to pay this debt to Mrs. McClellan, and hence it is insisted, the property included in the conveyance is bound for the claim. And it is further urged on the part of the complainants, that Mrs. Bedford, by her deed to

John Hillen, of the 18th of October, 1827, again recognised the existence of this debt, and the liability of the property for its payment.

It must be borne in mind, however, that these conveyances, both of them, were executed long before the present Mrs. McClellan executed her release of March, 1834, and it would be manifestly unjust to hold Mrs. Bedford bound by the stipulations of those deeds, and relieve Mrs. McClellan from the operation of her release to her former guardian. In my opinion, there not only is no good reason why Mrs. Bedford should be held liable upon the stipulations of these deeds, and Mrs. McClellan discharged from the effect of her release, but if any discrimination must be made, it should be in favor of the former, and not the latter. Mrs. Bedford had been stripped of all her property under circumstances of foul wrong and imposition, and it is not difficult to suppose she would submit to almost any terms to recover some portion of it. Messrs. Kennedy and Glenn, having a due and proper regard for their own safety, could not have reconveyed the property to her upon any materially different terms. And Mr. Hillen, having become her surety, was compelled to take a deed which would protect him from danger. Situated thus, we may well understand the considerations which induced Mrs. Bedford to take the deed from Kennedy, Glenn, and Mitchell, and to give the deed to Hillen.

But Mrs. McClellan, in executing the release to her father, on the 12th of March, 1834, was subject to no such influences. She was of competent age. His guardianship had terminated nearly nine years previously, and there was nothing in their relative position at that time which can excite the slightest suspicion that, in releasing him, she was not acting with entire and absolute freedom of will, and with full knowledge of what she was doing.

I hold it, therefore, to be clear, that so long as that release stands, Mrs. McClellan and her husband, the present complainants, cannot be permitted to recover against Mrs. Bedford and those who claim under her, because, by any previous act or covenant on her part, she may have consented that the

property which originally belonged to her should be responsible for the debts of Mitchell.

But the complainants have filed, under the commission, the transcript of the record of a suit instituted in this Court in the year 1838, by the present complainants, against Richard Bennet Mitchell alone, in which that release was impeached, and, by the decree of the Chancellor, set aside, in the year 1840. The admissibility of this record is excepted to upon several grounds, and amongst others, upon the ground that the excepting defendants were not parties to the cause in which the decree was pronounced, and I have no doubt the exception is well taken. It seems to me it would be a most pernicious doctrine to establish that the decree passed in that cause, to which Mrs. Bedford and the other excepting defendants were not parties, should be received in evidence against them. If that bill was filed for the purpose of removing this release out of the way, and subjecting by such removal the property of Mrs. Bedford, to the claim of the complainants against Mitchell, then it was essentially necessary that she and the other parties whose interests are associated with hers, should have been made parties. The decree otherwise would have been fraudulent and void as to them, and of course can have no operation whatever as against them. *Story's Eq. Pl.*, sec. 427.

Upon the whole, then, and without expressing any opinion as to the effect of the plea of the act of limitations, I am prepared to sign a decree dismissing the bill so far as it proposes to affect the property which originally belonged to *Henrietta A. Bedford*, and which became vested, by the conveyances mentioned in the proceedings, in Kennedy and Glenn. Different considerations may apply to such property (if there be any) as belonged to Richard Bennet Mitchell not derived from the said Henrietta A. Bedford, and as to such property no opinion is now expressed.

NELSON, for Complainants.
WALLIS, for Defendants.